UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEFA RENEE FORTUNEL,<br><br>          Plaintiff,<br><br>     v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>          Defendant. | No.  2:15-cv-1198-KJN<br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Income Benefits ("DIB") under Title II of the Social Security Act ("Act").[1]  In her motion for summary judgment, plaintiff principally contends that the Commissioner erred by finding that plaintiff was not disabled from February 7, 2011, through the date of the final administrative decision.  (ECF No. 16.)  The Commissioner filed an opposition to plaintiff's motion and a cross-motion for summary judgment, to which plaintiff replied.  (ECF Nos. 20, 21.)

////

---

[1] This action was referred to the undersigned pursuant to E.D. Cal. L.R. 302(c)(15), and both parties voluntarily consented to proceed before a United States Magistrate Judge for all purposes. (ECF Nos. 7, 8.)

1

For the reasons discussed below, plaintiff's motion for summary judgment is GRANTED IN PART, the Commissioner's cross-motion for summary judgment is DENIED, and this matter is remanded for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

I.     BACKGROUND

Plaintiff was born on May 8, 1963, completed the eleventh grade, and speaks English. (Administrative Transcript ("AT") 230, 252, 254.)[2] She has worked as a customer service associate and as a department manager at Lowes hardware store. (AT 254.) On May 21, 2012, plaintiff applied for DIB alleging that her disability began on February 7, 2011, at the age of 47. (AT 64, 80, 177-85.) Plaintiff alleged that she was disabled primarily due to pain and damage to the tendons in her shoulders, wrists, hands, middle finger, knees, and ankles, as well as depression, anxiety and high cholesterol. (AT 64, 253.) After plaintiff's applications were denied initially and upon reconsideration, plaintiff requested a hearing before an administrative law judge ("ALJ"), which took place on February 25, 2014, and at which plaintiff, represented by an attorney, and a vocational expert testified. (AT 37-63.) The ALJ issued a decision dated April 11, 2014, determining that plaintiff had not been under a disability, as defined in the Act, between February 7, 2011, and the date of that decision. (AT 10-30.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on April 2, 2015. (AT 1-7.) Plaintiff then filed this action in federal district court on June 3, 2015, to obtain judicial review of the Commissioner's final decision. (ECF No. 1.)

II.     ISSUES PRESENTED

On appeal, plaintiff raises the following issues: (1) whether the ALJ improperly failed to consider the opinions of treating physician Dr. Hu when determining plaintiff's residual functional capacity ("RFC"); (2) whether the ALJ improperly considered and weighed critical parts of the opinions of treating physician Dr. Aquino and examining physician Dr. Bathgate when determining plaintiff's RFC; (3) whether the ALJ improperly discounted the testimony of

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical and mental health history, the court does not exhaustively relate those facts in this order. The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

plaintiff as to her own symptoms and functional limitations; and (4) whether the Appeals Council erred in considering the additional MRI evidence plaintiff submitted in connection with her administrative appeal of the ALJ's decision.

III.  LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is more than a mere scintilla, but less than a preponderance.  Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted).  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation."  Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).  However, the court may only consider the reasons given by the ALJ for his decision and "may not affirm the ALJ on a ground upon which he did not rely."  Orn, 495 F.3d at 630.

IV.  DISCUSSION

   A.   Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to DIB pursuant to the Commissioner's standard five-step analytical framework.[3]  As an initial matter, the ALJ found that plaintiff remained

---

[3] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program.  42 U.S.C. §§ 401 et seq.  Supplemental Security Income is paid to disabled persons with low income.  42 U.S.C. §§ 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment . . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A parallel five-step sequential evaluation governs eligibility for benefits under both programs.  See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

3

insured for purposes of DIB through December 31, 2016.  (AT 15.)  At the first step, the ALJ concluded that plaintiff had not engaged in substantial gainful activity since February 7, 2011, the alleged onset date.  (Id.)  At step two, the ALJ found that plaintiff had the following severe impairments:

> [H]istory of degenerative joint disease of the left shoulder with surgical repair, chronic right shoulder pain/strain, degenerative joint disease of the left knee, right patellofemoral syndrome, cervical degenerative disc disease status post fusion, mild degenerative disc disease of the lumbar spine, adjustment disorder with mixed anxiety and chronic depression, (20 CFR 404.1520(c)).

(Id.)  However, at step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (AT 16-18.)

Before proceeding to step four, the ALJ assessed plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform  simple, routine, and repetitive tasks at the light exertional level as defined in 20 CFR 404.1567(b) except she can never climb ladders, ropes, or scaffolding and she cannot work with or near

---

Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.

Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled.  If not, proceed to step four.

Step four:  Is the claimant capable of performing her past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.

Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

4

> heights, hazards, or moving machinery.  The claimant can occasionally reach overhead with both arms and she can tolerate no more than occasional contact with the public.

(AT 15.)

At step four, the ALJ determined that plaintiff was not capable of performing any past relevant work.  (AT 24.)  At step five, the ALJ found that in light of plaintiff's age, education, work experience, and residual functional capacity, that there were jobs that exist in significant numbers in the national economy that plaintiff could perform.  (Id.)  Thus, the ALJ concluded that plaintiff had not been under a disability, as defined in the Act, from February 7, 2011, through the date of the ALJ's decision.  (AT 25.)

      B.      Plaintiff's Substantive Challenges  to the Commissioner's Determinations

            *1.*     *The ALJ Committed Prejudicial Error in Failing to Properly Consider and Weigh the Treating Opinions of Dr. Hu.*

First, plaintiff contends that the ALJ committed prejudicial error by not properly considering and weighing Dr. Hu's treating opinions when determining plaintiff's RFC.  The court agrees.

Title 20 C.F.R. §§ 404.1527(c) mandates that the Commissioner consider every medical source opinion by promising claimants that the administration "will evaluate every medical opinion we receive."  Id.  This regulation defines medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions."  Id. § 404.1527(a)(2).

Here, Dr. Hu issued several medical reports between February 10, 2011, and April 6, 2012, in connection with his treatment of plaintiff.  (AT 419-28, 440-51, 472-88.)  During this time, on September 7, 2011, Dr. Hu performed left shoulder surgery on plaintiff after MRI results revealed a large joint effusion and a tear of her rotator cuff, among other problems with that shoulder.  (AT 407-12, 422-23, 468-69.)  Also during this time, Dr. Hu tracked plaintiff's recovery progress and opined on plaintiff's ability to work and perform work-related functions

5

1   after her surgery.  (AT 414, 477-78, 480-82.)

2   Specifically, in a report dated January 24, 2012, Dr. Hu summarized plaintiff's shoulder
3   surgery, and conducted a physical examination, recording clinical findings regarding plaintiff's
4   range of motion, muscle strength, and sensation.  (AT 480.)  Dr. Hu noted that plaintiff was
5   making a good recovery, and that she would continue with physical therapy.  (Id.)  However, Dr.
6   Hu opined that that plaintiff would have permanent limitations in her left shoulder, and could not
7   lift any weight greater than ten pounds or do any "overhead work."  (AT 481.)  Furthermore, he
8   opined physical limitations on a function-by-function basis, finding that plaintiff could never
9   reach above the shoulders or climb, could only occasionally push, pull, kneel or squat, and could
10  only occasionally lift no more than 10 pounds.  (AT 482.)

11  On April 6, 2012, Dr. Hu again summarized plaintiff's medical history and conducted a
12  clinical examination of plaintiff's range of motion, muscle strength, and sensation.  (AT 477-78.)
13  Dr. Hu diagnosed plaintiff with a "massive rotator cuff tear with approximately 80% repair of her
14  rotator cuff" and indicated that there would be "no other further intervention for [the] left
15  shoulder."  (AT 478.)  Based on these findings, Dr. Hu opined that plaintiff would have
16  permanent functional limitations of lifting no more than ten pounds and no overhead lifting or
17  reaching above her shoulders.  (Id.)

18  The court finds that these medical reports issued by Dr. Hu constituted treating physician
19  opinions under the applicable regulations because they reflected medical judgments from one of
20  plaintiff's treating physicians regarding the nature and severity of plaintiff's impairments made in
21  functional terms applicable to determining disability under the Act.  See 20 C.F.R.
22  § 404.1527(a)(2).  Accordingly, the ALJ was required to consider Dr. Hu's opinions and to
23  explain what, if any, weight he assigned them in determining plaintiff's RFC along with reasons
24  in support of that conclusion.  Id. § 404.1527(c).  However, the ALJ failed to satisfy these
25  requirements.  Indeed, the ALJ failed to specify in his RFC discussion what weight, if any, he
26  accorded to Dr. Hu's treating opinions and his reasons for making such a determination.  (See AT
27  18-22.)  Moreover, the ALJ provided no specific discussion of Dr. Hu's opinions at any point in
28  the decision, thus providing a strong indication that he wholly failed to consider them.  The ALJ's

lack of consideration makes it difficult for the court to conduct its review of the final decision of the Commissioner and violates the ALJ's duty to evaluate all of the medical opinion evidence in the record. Accordingly, the ALJ erred by failing to consider Dr. Hu's treating opinions.

The Commissioner argues that the ALJ was not required to weigh the opinions contained in Dr. Hu's treatment notes because they largely opined that plaintiff could not work, which was a determination reserved for the ALJ, and because the limitations Dr. Hu assessed to plaintiff were limited in duration to the specific periods of time for which he opined plaintiff was disabled. However, a review of Dr. Hu's notes shows that while he did opine on several occasions that plaintiff could not work, he also opined on a function-by-function basis that the limitations associated with her left shoulder impairment would be permanent. (AT 478, 481-82.) Accordingly, the ALJ was required to provide a statement as to what, if any, weight he assigned Dr. Hu's opinions as to plaintiff's specific functional limitations along with proper reasons supporting that assigned weight. The ALJ erred in not doing so and it is of no consequence that Dr. Hu also opined that plaintiff was unable to work for specific periods of time.

The Commissioner also suggests that the ALJ could have relied on the contrary opinion of consultative examiner Dr. Flanagan to discount Dr. Hu's opinions. However, because of his failure to comply with the regulations, the ALJ did not rely on this or any other rationale as part of his analysis, and the court is not permitted to make post hoc rationalizations for the ALJ. Barbato v. Comm'r, 923 F.Supp. 1273, 1276, n.2 (C.D. Cal. 1996); Lewin v. Schweiker, 654 F.2d 631, 634-35 (9th Cir. 1981). Indeed, a reviewing court cannot affirm an ALJ's decision denying benefits on a ground that was not invoked by the ALJ himself. Stout v. Comm'r, 454 F.3d 1050, 1054 (9th Cir. 2006) (citing Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001)).[4]

////

////

---

[4] The Commissioner makes additional arguments in its cross-motion for summary judgment for why Dr. Hu's opinions were not entitled to any weight. However, because the ALJ failed to articulate such reasons or even acknowledge Dr. Hu's opinions, the court cannot rely on these additional post hoc rationalizations to support the ALJ's decision. See Stout, 454 F.3d at 1054 (quoting Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003)) ("'[W]e are constrained to review the reasons the ALJ asserts.'").

Finally, the Commissioner asserts that while the ALJ "did not utter the 'magic words' to reject Dr. Hu's assessment, it is clear from his decision that he reviewed the medical evidence of record including Dr. Hu's assessment." (ECF No. 20 at 7.) However, it was not enough under the applicable regulations that the ALJ consider Dr. Hu's medical notes as part of his RFC assessment given that Dr. Hu also provided his treating opinion on a function-by-function basis. The ALJ was required to state what, if any, weight he assigned to Dr. Hu's opinions and provide proper reasons for that decision that were supported by substantial evidence. See 20 C.F.R. § 404.1527(c). The ALJ did not do so here. The Commissioner's assertion that the ALJ at least considered Dr. Hu's notes in determining plaintiff's RFC does not excuse this error.

The ALJ's error in failing to discuss Dr. Hu's opinions in any manner when determining plaintiff's RFC constituted prejudicial error. The ALJ determined at step five that plaintiff was able to work as an office helper, assembler in any industry, or production/operator. (AT 25.) However, because the ALJ reached his RFC conclusion without properly considering Dr. Hu's opinion, he could not rely on that erroneous determination to support his step five conclusion, and, ultimately, his conclusion that plaintiff was not disabled. Furthermore, the ALJ's step five determination relied on the vocational expert's testimony in response to the ALJ's hypothetical questions that were premised on his erroneous RFC determination. (See id.) While the ALJ stated that "the jobs identified by the vocational expert do not require overhead work activity" (AT 20), the VE was never questioned regarding the impact of a hypothetical total limitation on overhead work activity, and the VE never testified that the jobs he identified did not require such activity, or how much such a limitation would erode the availability of those jobs. (See AT 54-62.) Accordingly, the ALJ's failure to consider Dr. Hu's opinions was not harmless as it rendered the AL's RFC and step five determinations without substantial support from the record.

        2.     *The ALJ also Committed Prejudicial Error in Addressing the Opinions of Dr. Aquino and Dr. Bathgate.*

Plaintiff contends that the ALJ also erred by not considering or mischaracterizing critical portions of the opinions of Dr. Aquino and Dr. Bathgate. The court agrees.

////

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Holohan v. Massanari, 246 F.3d 1195, 1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Generally speaking, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a non-examining physician's opinion. Holohan, 246 F.3d at 1202.

While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). The regulations require the ALJ to weigh the contradicted treating physician opinion, Edlund, 253 F.3d at 1157,[5] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, by itself, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 830-31. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. Id. at 830. Failing to articulate any reasons, or articulating conclusory reasons without giving specific examples, is error under both of these standards. Garrison v. Colvin, 759 F.3d 995, 1012-13 (9th Cir. 2014) (holding "an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it,

---

[5] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; (6) specialization. 20 C.F.R. § 404.1527.

9

asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion"); Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998) (finding ALJ who discounted medical opinions because other opinions were "more objective" did not satisfy the specific and legitimate reasons test).

Dr. Aquino, one of plaintiff's treating physicians, provided a medical source statement primarily regarding plaintiff's physical impairments on May 12, 2013. (AT 290-92.) Dr. Aquino opined that plaintiff could stand, walk, or sit for eight hours out of an eight hour day, and that plaintiff would need a job that permits shifting positions at will. (AT 291.) Dr. Aquino further opined that plaintiff could lift and carry ten pounds frequently, twenty pounds occasionally, and could never carry more than twenty pounds. (Id.) Dr. Aquino also opined that plaintiff had no postural limitations except that she could climb ladders only occasionally. (Id.) Dr. Aquino further opined that while plaintiff had 100 percent manipulative capacity, plaintiff only had 70 percent reaching capacity in her right arm, and zero percent reaching capacity in her left arm, specifically noting that plaintiff had "no above shoulder use" in her left arm. (Id.) Dr. Aquino opined that plaintiff suffered from depression and that her pain and other symptoms would "constantly" interfere with the concentration and attention needed to perform even simple work tasks. (AT 292.) Finally, Dr. Aquino opined that plaintiff was only capable of performing low stress jobs and that her impairments would require her to be absent from work about three days per month. (Id.)

The ALJ determined that Dr. Aquino's opinion that plaintiff could lift up to 10 pounds frequently and 20 pounds occasionally to be consistent with the light exertional limitations found in the ALJ's RFC decision. (AT 23.) However, the ALJ also found that four specific aspects of Dr. Aquino's opinion were entitled to either "little weight" or "very little weight." (AT 23-24.) First, the ALJ assigned "very little weight" to Dr. Aquino's opinion that plaintiff would need to shift positions at will because the ALJ concluded that the medical record established that plaintiff had a pain free ability to sit, stand, and walk. (AT 23.) Second, the ALJ gave "little weight" to Dr. Aquino's opined limitation to occasionally climbing ladders because plaintiff's "compromised ability to perform postural activities is not supported by the physical examinations

documenting only upper extremity limitations for all of 2013."[6] (Id.) Third and fourth, the ALJ considered Dr. Aquino's opined limitations regarding plaintiff's fine and gross manipulative abilities and plaintiff's ability to consistently attend work, and concluded that her daily activities of caring for her grandchildren and performing religious activities were inconsistent with such limitations, thus entitling them to "little weight." (AT 24.)

While the ALJ specifically addressed the above aspects of Dr. Aquino's opinion, he totally omitted from his discussion the most significant restrictions articulated by that opinion: the limitations on plaintiff's overhead reaching and lifting, particularly on her left side. As noted above, Dr. Aquino opined that plaintiff was limited to overhead reaching to 70 percent of a workday using her right arm, and was completely precluded from doing so using her left arm. (AT 291.) The ALJ failed to address these overhead reaching limitations, instead concluding as part of his RFC determination that plaintiff could engage in occasional overhead reaching with both arms. (AT 18, 23-24.) The ALJ did not provide any reasons in his decision explaining how his RFC determination accurately reflected Dr. Aquino's opinion regarding plaintiff's overhead reaching limitations, or alternatively, stating a proper legal basis for rejecting this opinion that was supported by substantial evidence in the record. Accordingly, the ALJ erred in not fully considering this aspect of Dr. Aquino's opinion. See Garrison, 759 F.3d at 1012-13.

Furthermore, the ALJ mischaracterized Dr. Aquino's opinion regarding plaintiff's manipulative abilities, apparently substituting Dr. Aquino's opinion regarding plaintiff's overhead reaching limitations as accounting for her ability to engage in gross and fine manipulation activities with her fingers and hands. (AT 23-24, 291.) Dr. Aquino opined that plaintiff had no fine and gross finger and/or hand manipulation limitations, but the ALJ determined that Dr. Aquino opined such limitations and used this mischaracterization as a reason to discount Dr. Aquino's opinion. (Id.) The use of this mischaracterization of Dr. Aquino's opinion to discount

////

---

[6] Confusingly, while the ALJ discounted Dr. Aquino's opined limitation to occasional ladder climbing as being too restrictive in light of the physical examination evidence, the ALJ determined that plaintiff "can never climb ladders" as part of his RFC determination. (AT 18.)

11

that opinion was in error.[7]

The ALJ's handling of Dr. Bathgate's opinion is even more confusing. Dr. Bathgate performed an orthopedic examination on March 14, 2012, as part of plaintiff's workers' compensation process. (AT 296-304.) Dr. Bathgate reviewed plaintiff's medical records and conducted a physical examination of plaintiff's neck and upper extremities, recording his clinical findings regarding plaintiff's range of motion, muscle strength, reflexes and nerves. (AT 299-302.) Based on his examination and review, Dr. Bathgate opined that plaintiff "has work restrictions for the left upper extremity of no overhead lifting, and no lifting more than 25 pounds" and "restrictions from occasional climbing ladders, pushing or pulling." (AT 303.)

In his discussion of Dr. Bathgate's opinion, the ALJ appeared to acknowledge that Dr. Bathgate opined that plaintiff was completely precluded from any overhead lifting with her left arm. (AT 20.) However, only a few sentences later, the ALJ perplexingly stated that "[t]hese same limitations are consistent with [plaintiff's] ability to reach overhead only occasionally, and the undersigned notes that the jobs identified by the vocational expert do not require overhead work activity." (Id.) The ALJ further stated that the limitations in the ALJ's RFC "are more significant that those 'permanent' restrictions given by the orthopedist [Dr. Bathgate] . . . ." (Id.)

As discussed above with regard to Dr. Aquino, Dr. Bathgate's opinion that plaintiff was precluded from all overhead lifting with her left arm was not coextensive with the ALJ's RFC determination that plaintiff could engage in occasional overhead reaching. While the ALJ claimed that Dr. Bathgate's opined overhead reaching limitation was consistent with the ALJ's RFC determination, it was not. Because the ALJ failed to adequately incorporate Dr. Bathgate's opinion into his RFC determination regarding the extent of plaintiff's ability to engage in

---

[7] While the court need not address the ALJ's other reasons for discounting certain aspects of Dr. Aquino's opinion in light of the more fundamental errors highlighted above, it is far from clear that the reasons the ALJ gave in support of these determinations were supported by substantial evidence. The medical records to which the ALJ cites in support of his conclusion that plaintiff had no lower body impairments (AT 348-59) clearly indicate that plaintiff had continuing pain in her knees and had sustained a right ankle injury. (AT 349, 352, 356.) Furthermore, contrary to the ALJ's reasoning, plaintiff's testimony that she was able to sit in church and that she could not wash dishes without taking breaks (AT 47, 49) was not inconsistent with Dr. Aquino's opinions regarding limitations attributable to plaintiff's upper extremity impairments.

overhead reaching, or provided proper reasons for rejecting that opined limitation, the ALJ erred in considering Dr. Bathgate's opinion.[8]

The ALJ's errors in mischaracterizing portions of Dr. Aquino's and Dr. Bathgate's opinions and in failing to account for or properly discount their opinions that plaintiff could not do any overhead reaching activities with her left arm were not harmless. The ALJ's hypotheticals to the VE during the administrative hearing, including the one on which the ALJ ultimately relied to support his step five determination, assumed only an individual who could perform occasional overhead reaching. (AT 60-61.) No hypotheticals were posed to the VE by the ALJ as to whether a person with plaintiff's other limitations could still perform work when a limitation to no overhead reaching is taken into account. Because the ALJ did not either accurately incorporate the limitation into his RFC determination or properly discount it, the ALJ committed prejudicial error. See DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991) ("If the hypothetical does not reflect all the claimant's limitations, we have held that the [vocational] expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy. . . .").

### 3. *Instructions on remand*

Plaintiff contends that the ALJ's prejudicial errors warrant remand of this case for further proceedings so that the ALJ can reconsider the medical opinion evidence in the record. The court agrees.

When the court finds that the ALJ committed prejudicial error, it has the discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). Generally, if the court finds that the ALJ's decision was erroneous or not supported by substantial evidence, the court must follow the "ordinary remand rule," meaning that "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014). A

---

[8] Furthermore, as noted above with regard to Dr. Hu, the VE never testified that the jobs he identified through his testimony could be performed without any overhead reaching. (See AT 54-62.) Accordingly, the ALJ's determination that those jobs did not require overhead reaching was not supported by substantial evidence.

13

remand for an award of benefits is inappropriate where the record has not been fully developed or there is a need to resolve conflicts, ambiguities, or other outstanding issues. Id. at 1101.

Here, the ALJ's failure to discuss Dr. Hu's opinions requires remand so that the ALJ can properly consider and weigh them in light of the other evidence in the record. Similarly, the ALJ's failure to properly address the opinions of Dr. Aquino and Dr. Bathgate also suggest that remand for further consideration of the medical opinion evidence is warranted. On remand, the ALJ shall reassess the medical opinion evidence in the record and clearly discuss, physician-by-physician, what, if any, weight he assigned to each opinion, his reasons for making such a determination, and why substantial evidence supports such a determination. The ALJ is free to develop the record in other ways, as needed.

Importantly, the court expresses no opinion regarding how the evidence should ultimately be weighed, and any ambiguities or inconsistencies resolved, on remand. The court also does not instruct the ALJ to credit any particular opinion or testimony. On remand, the ALJ may determine that any, some, or all of medical opinions in the record, are entitled to controlling weight, substantial weight, reduced weight, or no weight at all—provided that the ALJ's determination complies with applicable legal standards, is clearly articulated via appropriate reasoning provided in the decision, and is supported by substantial evidence in the record.

4. *Other Issues*

In light of the court's conclusion that the case must be remanded for further analysis of the medical opinion evidence with regard to determining plaintiff's RFC, the court declines to reach the remaining issues presented by plaintiff. On remand, the ALJ will have an opportunity to further consider these issues, and address the medical evidence and non-medical testimony in context of the record as a whole. The ALJ will also be free to reevaluate his analysis and/or further develop the record with respect to any or all of these additional issues. Nevertheless, while the court declines to address the merits of plaintiff's arguments regarding the January 2014 MRI result first presented to the Appeals Council, on remand, the ALJ shall review and consider this additional evidence as part of his reevaluation of plaintiff's case.

////

V.     CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 16) is GRANTED IN PART.

2. The Commissioner's cross-motion for summary judgment (ECF No. 20) is DENIED.

3. The action is remanded for further proceedings consistent with this order pursuant to sentence four of 42 U.S.C. § 405(g).

4. Judgment is entered for plaintiff.

IT IS SO ORDERED.

Dated: July 15, 2016

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

KJN/amd